UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT of INDIANA

CASE NO. __1:22-cv-1993-TWP-MJD__

**FILED**

**10/7/2022**

**U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**Roger A.G. Sharpe, Clerk**

JOEY KIMBROUGH,

      Plaintiff,

  v.

AMERICAN EXPRESS COMPANY
AKA AMERICAN EXPRESS
NATIONAL BANK;

and

TRANS UNION LLC

      Defendants.

**COMPLAINT FOR VIOLATIONS**

**OF THE FAIR CREDIT**

**REPORTING ACT**

**AND**

**JURY DEMAND**

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

THE PLAINTIFF NOW APPEARS, JOEY KIMBROUGH ("Plaintiff"), acting

pro se, alleges violations of the Fair Credit Reporting Act ("FCRA") by AMERICAN

EXPRESS COMPANY AKA AMERICAN EXPRESS NATIONAL BANK (hereafter

collectively "AMEX"), and TRANS UNION LLC ("TRANS UNION").  AMEX and

Trans Union hereafter referred to collectively as ("Defendants").

## INTRODUCTION

1.  Plaintiff's Complaint is based on the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.

2.  The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also sets obligations on "furnishers," who offer credit information to credit reporting organizations.

3.  The FCRA shields consumers from the serious risk of harm that might otherwise result from inaccurate reporting through a complex system of procedural safeguards. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally

follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

4. Plaintiff, Pro Se, brings this action to challenge the actions of Defendant(s) with regard to erroneous reports of derogatory credit information to national reporting agencies and Defendant(s) failure to properly investigate Plaintiff's disputes.

5. Defendant(s) failed to properly investigate Plaintiff's disputes, damaging Plaintiff's creditworthiness.

6. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

7. Unless otherwise stated, all conduct engaged in by the Defendant(s) took place in Indiana.

8. Defendant(s) committed each of these violations knowingly, willfully, and intentionally, and Defendant(s) did not maintain procedures reasonably adapted to avoid such violations.

## JURISDICTION AND VENUE

9. This Court has jurisdiction under 28 U.S.C. § 1332, § 1337, and 15 U.S.C. 1681(p).

10. Jurisdiction of the court arises pursuant to 15 U.S.C. § 1681(p), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy."

11. Venue and personal jurisdiction in this district are proper because Defendant(s) do or transacts business within the district and a material portion of the events at issue occurred in this district.

## **PARTIES**

12. Plaintiff is a natural person residing in Kokomo, Indiana.

13. Plaintiff resided in Kokomo, Indiana, at all times relevant and all actions related to Plaintiff stated herein took place in or around Kokomo, Indiana.

14. Plaintiff is a consumer as that term is defined by 15 U.S.C. § 1681a(c).

15. Defendant (AMEX) is a New York Foreign For-Profit Corporation with its principal place of business located at 200 Vesey Street, New York, NY 10285 and which conducts business in the State of Indiana.

16. Defendant (Trans Union) is a Delaware Foreign Limited Liability Company with its principal place of business located 35 Miller Avenue, Unit 123, Mill Valley, IL 60661 and which conducts business in the State of Indiana.

17. Defendant(s) are a person as that term is defined by 15 U.S.C. § 1681a(b).

18. Defendant(s) business includes obtaining and using consumer credit reports for the professed purpose of using such information in connection with credit transactions involving consumers, as contemplated by 15 U.S.C. § 1681b.

19. Defendant(s) acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

20. Defendant(s) agents, employees, officers, members, directors, and representatives were working within the course and scope of their employment when taking the actions stated herein.

## GENERAL ALLEGATIONS

21. Plaintiff alleges that Defendant(s) are incorrectly reporting that Plaintiff's account is closed, with inaccurate high credit limit, with inaccurate date last active, with inaccurate date opened, and with incomplete and inaccurate payments history.

22. Plaintiff alleges that if a data furnisher decides to report an account, the FCRA requires complete and accurate reporting; therefore, a data furnisher cannot pick and choose which portions of the account to report. If a data furnisher reports an account, then it should report all portions of that account in a manner which complies with the maximum accuracy and completeness standard of the FCRA.

23. Plaintiff alleges that Defendant(s) are familiar with the FCRA requirements and credit reporting industry standards and subscribes thereto.

24. Plaintiff alleges that Defendant(s) understands that deviation from the FCRA requirements or credit reporting industry standards can, and often does, result in the denial of credit, higher interest rates, and prompts a negative inference that would not be drawn if the data were reported in accordance with the recognized standards.

25. Plaintiff alleges that Defendant(s) actions alleged herein were committed knowingly, intentionally, and in reckless disregard of the unambiguous meaning of the FCRA, regulatory guidelines on accurate reporting, and credit reporting industry standards to purposefully undermine Plaintiff's ability to repair his credit score.

26. In the alternative, Plaintiff alleges that Defendant(s) actions were the result of negligent policies, procedures, and an objectively unreasonable interpretation of the FCRA, all which inevitably led to inaccurate, misleading, or incomplete credit reporting.

## FACTUAL ALLEGATIONS

27. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

A. **e-OSCAR**

28. e-OSCAR is the web-based system developed by Experian, Equifax, TransUnion, and Innovis that enables Data Furnishers and CRAs to create and respond to consume credit disputes.

29. When a consumer sends a dispute letter to a CRA, the CRA then sends an automated credit dispute verification ("ACDV") via e-OSCAR to the appropriate Data Furnisher.

30. The ACDV contains codes next to certain data fields associated with a credit file.

31. When a data furnisher reports on a consumer's account as part of its regular reporting, it sends a regular monthly transmission to each CRA.

32. When a data furnisher reports on a consumer's account outside of its regular monthly transmission, it sends an automated universal dataform ("AUD") to each CRA.

**B. Plaintiff's Consumer Report Contains Inaccurate Adverse Tradelines, which Plaintiff Disputed Multiple Times to no Avail**

33. On or about February 9th, 2022, Plaintiff ordered a three-bureau credit report from Identity IQ to ensure that proper reporting by Plaintiff's creditors ("the February 9th Credit Reports").

34. Plaintiff noticed adverse tradelines in his February 9th Credit Reports, reporting inaccurate, misleading, or incomplete information that did not comply with the FCRA standards.

35. Plaintiff then disputed the inaccurate tradelines regarding the accounts with AMEX via USPS certified mail on or about February 14th, 2022.

36. Defendant received said certified letter pointing out the inaccurate AMEX tradeline(s) and was signed for on or about February 18th, 2022.

37. Plaintiff's Dispute Letter specifically put AMEX on notice that, they were violating the FCRA and a cure would be to "fix or delete" the inaccuracies.

38. Specific inaccuracies in this first attempt to correct were around the "High Credit Limit" being reported as $17,087.00 as reported by Trans Union and $0 as reported by Experian. A second inaccuracy was proven to AMEX as the

"Date Last Active" being reported 11/30/2018 as reported by Trans Union and 04/01/2019 as reported by Experian.  A third inaccuracy was proven to AMEX as the "Date Opened" being reported as 05/07/2015 by Trans Union and 05/01/2015 as reported by Experian.

39. The "Date Last Active" inaccuracy is mentioned as utmost important as the court uses that date to determine statute of limitations claims.

40. Plaintiff's Dispute Letter detailed what was perceived to be problematic about the AMEX reporting, addressing each tradeline individually.

41. Plaintiff made a simple request that the derogatory reported be updated to ensure accuracy and completeness of the accounts as required by the FCRA.

42. Plaintiff is informed and believes that Trans Union received Plaintiff's Dispute Letters and, in response, sent Plaintiff's disputes to AMEX, as the data furnisher, via an ACDV through e-OSCAR.

43. On or about March 12th, 2022, Plaintiff ordered a second three-bureau credit report from Identity IQ to determine if the reporting on the account was updated.

44. Plaintiff having discovered that AMEX failed to cure the inaccuracies filed a complaint with the Consumer Financial Protection Bureau ("CFPB") as a cause for remedy.

45. The CFPB complaint filed on March 17th, 2022, listed the inaccuracies, and once again asked for cure in the form of fix or delete which is the requirement as outlined in the FCRA.

46. Plaintiff upon belief that AMEX was going to continue to violate the FCRA as written, and report inaccuracies authored a second letter in good faith.

47. This second letter was sent certified mail on or about March 17th, 2022, via USPS and was signed for on or about March 21st, 2022.

48. The second letter indicated that AMEXs "reporting of inaccurate information has caused severe damage to my character, my reputation, my general mode of living, and my ability to obtain credit for personal and household uses."

49. The second letter indicated to AMEX "You and your inaccurate reporting have damaged my livelihood."

50. The second letter highlighted 15 USC 1681 s-2 "Responsibilities of furnishers of information to consumer reporting agencies"

51. The second letter also defined "Duty, Accurate, and Prohibition" as outlined through the FCRA.

52. The second letter defined the IRS 2021 Publication 4681. "Even if you don't receive a Form 1099-C, you must report cancelled debt as gross income on your tax return."

53. The IRS clearly defines a charge off as Gross or Ordinary Income. Therefore, Income does not get reported on the Consumer Report which in fact make AMEX's reporting of this account as inaccurate.

54. By definition the IRS clearly says a canceled debt or charge-off is income. The reporting of this account as a debt is inaccurate.

55. 15 USC 1681 s-2 says that AMEX is a furnisher of information to a consumer reporting agency.  Therefore, AMEX is prohibited by law to furnish incorrect/inaccurate information.

56. 15 USC 1681 s-2(a)(1)(A) says "A person shall not furnish any information to relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."

57. AMEX was put on Notice that they were reporting inaccurate information through the letter dated March 17th, 2022.

58. Plaintiff requested a Form 1099-C as is required from AMEX as is written by the IRS Publication 4681.  AMEX has failed to send through this mandated IRS Form based off of the charge-off status of the debt in question.

59. Plaintiff offered as a cure in this second letter that AMEX delete the inaccurate information.

60. Defendant never replied to the letter dated March 17th, 2022, that was signed for by them on or about March 22nd, 2022 and continued reporting inaccuracies after having been put on Notice therefore continuing to damage Plaintiff.

61. On or about March 22nd, 2022, Plaintiff applied for a $2.1M loan with Community First Bank in Kokomo, Indiana.

62. On or about March 27th, 2022, Plaintiff was informed by Bob Hickman with a title of Senior Vice President at Community First Bank that the loan was

being denied.  A stated reason for denial was "derogatory tradelines" being
reported.

63. On or about April 27th, 2022, Plaintiff ordered a third three-bureau credit
report from Identity IQ to determine if the reporting on the account was
updated.

64. This three-bureau report showed that AMEX was still knowingly and
willingly reporting out inaccuracies to the detriment of the Plaintiff.

65. On April 27th, 2022, Plaintiff sent a third letter certified via USPS under
tracking number 7021 0950 0001 4169 8430.

66. The third letter was clearly listed as a "NOTICE TO AGENT IS NOTICE TO
PRINCIPLE NOTICE TO PRINCIPLE IS NOTICE TO AGENT".

67. The third letter further reiterated that "the reporting of inaccurate
information has caused severe damaged to my character, my reputation, my
general mode of living, and my ability to obtain credit for personal and
household uses."

68. The third letter offered a final cure as "Delete the inaccurate account(s) off of
my consumer report."

69. The third letter stated "YOU HAVE 10 Calendar days to DELETE these
accounts from my consumer report.  *This is your last chance to cure with
no statutory penalties involved!!*"

70. The third letter once again showed the Statement of Inaccuracies as reported
by AMEX.

71. Plaintiff was gracious with three attempts to cure.  All of those attempts were a willingness to just have the inaccuracies fixed or deleted as is clearly outlined in the FCRA.

72. Plaintiff was continually ignored by Defendant over several months and suffered actual damages (with Community First Bank loan loss – emphasis added) as a result of willful and negligent reporting of inaccuracies.  The only cure now is actual damages, statutory damages, and punitive damages as the court sees fit.

**C. Inaccuracy – AMEX**

73. Despite actual knowledge, AMEX continued to report Plaintiff's account, 349992046808**** to Trans Union with inaccurate and incomplete "High Credit Limit", "Date Last Active" and "Date Opened".

74. Despite actual knowledge, AMEX continued to report Plaintiff's account, 349992520469**** to Trans Union with inaccurate and incomplete "High Credit Limit", "Date Last Active" and "Date Opened".

75. Despite actual knowledge, AMEX continued to report Plaintiff's account, 349992521416**** to Trans Union with inaccurate and incomplete "High Credit Limit", "Date Last Active" and "Date Opened".

76. Despite actual knowledge, AMEX continued to report Plaintiff's account, 349992225184**** to Trans Union with inaccurate and incomplete "High Credit Limit", "Date Last Active" and "Date Opened".

77.  Despite actual knowledge, AMEX continued to report Plaintiff's account, 349992126978**** to Trans Union with inaccurate and incomplete "High Credit Limit", "Date Last Active" and "Date Opened".

78. Reporting "Commercial Accounts" as "Individual Accounts" and reporting as such on an individual's consumer report is patently incorrect. In addition, these inaccurate and incomplete tradelines are misleading in a way that can adversely affect credit decisions.

79. Plaintiff alleges that AMEX did not investigate the inaccuracies that were presented to them.

80. Trans Union provided notice to AMEX that Plaintiff was disputing the inaccurate and misleading information, but AMEX failed to conduct a reasonable investigation of the information as required by the FCRA.

81. Based on Plaintiff's disputes, the provided notice(s) by the CRA, and AMEX's own internal records, AMEX should have known that Plaintiff's account was being misrepresented and was in fact inaccurately being reported.

82. The most basic investigation would include a simple review of internal documentation on the account compared to its reporting in order to determine if it complies with the maximum possible accuracy and completeness standard of the FCRA.

83. Plaintiff alleges that AMEX did not review if its reporting complied with the FCRA standards for credit reporting, the dispute letters it received from

Plaintiff, the dispute letters it received from the CRAs, or its own internal records concerning Plaintiff's account.

84. If AMEX reviewed such standards and records, AMEX would have seen that its reporting was not in compliance and was therefore inaccurate or incomplete. At the very least, the investigation would reveal that there were valid concerns as relayed multiple times by Plaintiff.

85. AMEX should have ensured that the "same" High Credit Limit was being reported by Trans Union and Experian.  AMEX should have ensured that the "same" Date Last Active was being reported by Trans Union and Experian. AMEX should have ensured that the "same" Date of Last Payment was reflected by Trans Union and Experian. AMEX should have ensured that the "Bureau Code" was accurately listed as "Commercial" and NOT "Individual" as is reported by Trans Union and Experian.

86. By continuing to report Plaintiff's account to Trans Union it incorrectly appears to third parties viewing Plaintiff's credit report that he has a grossly exaggerated high credit limit, and the date of last activity is vast.  Further, it also appears to a third party that the account is an individual account (not commercial) and that the account is inaccurately listed as derogatory.

87. Further, as this inaccurate reporting is being used to calculate Plaintiff's Credit Score, the credit score alone being what most lenders use to determine Plaintiff's creditworthiness, it is misleading in such a way as to adversely affect credit decisions.

88. As payment history makes up thirty-five percent (35%) of a consumer's credit score, and as most lenders approve or deny credit based on a consumer's credit score (as opposed to pouring through each tradeline of every account listed to obtain context), the incorrect and incomplete payment history reported by AMEX is lowering Plaintiff's credit score, which adversely affects his ability to obtain credit.

89. The lack of investigation and reporting of inaccurate and incomplete information by AMEX is unreasonable.

**D. Damages**

90. Plaintiff pulled the credit reports at issue at a cost for access to the reports, after the dispute process, specifically for the sole purpose of verifying that the inaccuracies were fixed.

91. As a result of the inaccurate reporting, Plaintiff has incurred out-of-pocket expenses, and has also suffered emotional harm, physical sickness, and excessive stress resulting in doubt as to the effectiveness of the Fair Credit Reporting Act and the power of this Court to preserve and perpetuate Plaintiff's rights to accurate credit reporting as intended by Congress.

92. Plaintiff has been denied credit and is unable to rebuild his credit based on the inaccurate reporting by AMEX. Further, Plaintiff's diminished creditworthiness, resulting from AMEX's inaccurate reporting, has caused him to abandon his intentions to apply for certain credit.

93. AMEX's actions, as alleged herein, are in direct violation of the Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b).

## FIRST CAUSE OF ACTION (VIOLATION OF FCRA 15 U.S.C. § 1681E(B))

94. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above as if fully stated herein.

### A. Trans Union Failed to Assure Credit Reporting Accuracy

95. Trans Union ("CRA Defendant") violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports and the credit files it published and maintained concerning Plaintiff.

96. Had Trans Union maintained reasonable procedures to assure maximum accuracy, Trans Union would never have allowed AMEX to report the account as described herein.

97. Trans Union knew, or should have known, (1) that AMEX account(s) were reporting inaccuracies based on Plaintiff's dispute(s) and provided documentation, and (2) the account(s) were inaccurately listed as Individual when they were in fact Commercial account(s). Further, Trans Union knew, or should have known, that this inaccurate and incomplete reporting did not reflect maximum possible accuracy and completeness as required by the FCRA.

98. Congress specifically recognized the "elaborate mechanism developed for investigating and evaluating credit worthiness, credit standing, credit capacity, character, and general reputation of consumers." Nayab v. Capital One Bank (USA), NA, 942 F. 3d 480, 492 (9th Cir. 2019). The investigation and evaluation of Plaintiff's creditworthiness, credit standing, credit capacity, character, and general reputation as a consumer are all damaged by the inaccurate reporting the CRA Defendant allowed.

99. As a result of the CRA Defendant's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit, and other mental and emotional distress.

**B. Willful Violations**

100.    The CRA Defendant's violations, as described herein, were willful; specifically, the CRA Defendant has intentionally and purposefully set up a system where inaccuracies are not only probable, but inevitable.

101.    The CRA Defendant regularly, as a policy, ignore disputes by consumers and fail to perform even a basic investigation regarding disputes. Additionally, the CRA Defendant regularly fails to forward disputes to data furnishers, thereby frustrating the entire dispute process.

102.    To the extent that the CRA Defendant does send consumer disputes, the CRA Defendant sends these disputes to employees who do not live within the continental United States to hide or subvert a consumer's liability to

confront the individual(s) directly responsible for approving accurate reporting.

103.    The CRA Defendant's respective employees receive little to no training concerning how to accurately report consumer debt.

104.    Instead, the CRA Defendant's respective employees are instructed to parrot whatever information a data furnisher provides regardless of whether the information is accurate.

105.    The CRA Defendant's respective employees are regularly expected to review and approve over ninety (90) disputes per day, rendering less than five (5) minutes to review, investigate, and respond to each dispute received.

106.    The CRA Defendant has intentionally set up this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

107.    As a result of the CRA Defendant's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit, and other mental and emotional distress.

108.    The CRA Defendant's violations were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681(n).

109.    In the alternative, the CRA Defendant was negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681(o).

110.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from the CRA Defendant in an amount to be determined by this Court pursuant to 15 U.S.C § 1681(n) and § 1681(o).

## SECOND CAUSE OF ACTION (VIOLATION OF FAIR CREDIT REPORTING ACT 15 U.S.C. §§ 1681s-2(b) and 1681i(a)(1))

111.    Plaintiff re-alleges and incorporates the allegations in each and every paragraph by reference as if fully stated herein.

### A. AMEX Failed to Reinvestigate Following Plaintiff's Dispute

112.    Pursuant to 15 U.S.C. § 1681s-2(b), data furnishers are prohibited from providing any information relating to a consumer to any CRA if it knows, or has reasonable cause to believe, that the information is inaccurate or misleading and requires data furnishers to update and/or correct inaccurate information after a CRA notifies it of a consumer dispute.

113.    AMEX sent an AUD or monthly transmission to Trans Union which reported "High Credit", "Date Last Active", "Date Opened", and "Bureau Code".

114.    After receiving the Dispute Letters, AMEX did not correct the "High Credit Limit", "Date Opened, or "Date Last Active" as indicated by Plaintiff. Instead, AMEX verified and re-reported the inaccurate information to the CRA via ACDV to each.

115.    Once the account inaccuracies were presented in the three dispute letters, the account should be reporting to reflect the current high credit limit and date last active. Not doing so makes the reporting patently incorrect and very likely to mislead a credit reviewer of the consumers' performance and liability on the debt.

116.    AMEX violated 15 U.S.C. § 1681s-2(b) by either failing to conduct an investigation or failing to conduct a reasonable investigation, and re-reporting misleading and inaccurate account information.

117.    Trans Union provided notice to AMEX that Plaintiff was disputing the inaccurate and misleading information; however, AMEX failed to conduct a reasonable investigation as required by the FCRA.

118.    Based on Plaintiff's disputes along with a review of its own internal records, AMEX should have reported the Correct "High Credit" amount to all CRAs. Further, AMEX should have reported the Correct "Date Last Active" to all CRAs.  Lastly, AMEX should have reported the Correct "Date Opened" to all CRAs.

119.    Since AMEX has already decided to report this "Commercial Account" on Plaintiff's personal consumer report, as evidenced by it showing up on his personal report, once it received the Dispute Letters, it had a duty to review all relevant information, and update any incorrect or inaccurate information to each of the CRAs. Inaccurate information includes not only the information

reported, but also for omissions that render the reported information misleading.

120.    Reporting an account which has years of positive payment history, with multiple inaccuracies is patently incorrect.

121.    In addition, this inaccurate reporting also adversely affects credit decisions. These inaccurately reported account(s) are being considered when calculating Plaintiff's Credit Score. Most lenders, employers, and other individuals who access a consumer's credit report approve or deny credit or employment based upon the reported credit score and do not take time to look through each tradeline of every account listed to obtain context. Therefore, AMEX's reporting as described herein has a direct adverse effect on Plaintiff's Credit Score and his ability to rebuild his Credit Score and obtain new credit.

122.    The lack of investigation by AMEX, as required by the FCRA, is unreasonable.

**B. Willful Violations**

123.    Plaintiff alleges that AMEX has reported based upon objectively unreasonable interpretations of the FCRA standards of credit reporting and regulatory guidelines on how to accurately report under the FCRA.

124.    Plaintiff further alleges that AMEX has not properly trained those directly investigating disputes on FCRA requirements or credit reporting

industry standards and, as such, has developed reckless policies and procedures.

125.     Plaintiff alleges that rather than train its employees on accurate credit reporting, FCRA requirements, and industry standards, AMEX's employees tasked with reviewing disputes are expected to confirm the information being reported as "accurate" instead of investigating the reported information.

126.     In the alternative, AMEX was negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681(o).

**C. The CRA Defendant Failed to Reinvestigate the Disputed Information in Violation of 15 U.S.C. § 1681i(a)(1)**

127.     Pursuant to 15 U.S.C. § 1681i(a)(1), the CRA Defendant was required to conduct a reasonable investigation and to delete any information that was not accurate after receiving notice of Plaintiff's disputes regarding the AMEX accounts.

128.     Thus, the CRA Defendant failed to conduct a reasonable investigation and correct the misleading and/or inaccurate statements on the account within the statutory time frame.

129.     The CRA Defendant is not a passive entity bound to report whatever information a data furnisher provides.

130.     Plaintiff alleges the CRA Defendant is readily familiar with the FCRA requirements and credit reporting industry standards.

131.     Based on the foregoing, Plaintiff alleges that the CRA Defendant can, and does, suppress inaccurate information from being reported when data furnishers provide inaccurate information.

132.     The CRA Defendant can and does instruct data furnishers on how to properly report certain accounts from time to time upon request from a data furnisher.

133.     Trans Union failed to conduct a reasonable investigation because any basic investigation would have uncovered that AMEX was not reporting the account at hand correctly.

134.     Had Trans Union conducted a proper investigation it could have updated the account information as reflected in the dispute letters to indicate the correct information. However, Trans Union continued to report the account as described herein.

135.     Trans Union, therefore, did not conduct even the most basic investigation regarding the requirements set forth in the FCRA or credit reporting industry standards, otherwise the aforementioned would have been uncovered.

136.     In the alternative, Plaintiff alleges that Trans Union did not send an ACDV to AMEX to confirm accurate reporting on its account. Despite receiving the dispute letters providing notice of inaccuracies, Trans Union did not correct the tradeline or conduct an investigation.

137.    In the alternative, if the CRA Defendant deemed Plaintiff's dispute letters "frivolous or irrelevant" under 15 U.S.C. § 1681i(a)(3), the CRA Defendant failed to notify Plaintiff of such determination as required by 15 U.S.C. § 1681i(a)(3)(B). As Plaintiff received no such notice from the CRA Defendant, Plaintiff alleges the CRA Defendant deemed his Dispute Letters valid, and this triggered its obligation under 15 U.S.C. § 1681i(a)(1) and (2)(A), for which they did not comply.

**THIRD CAUSE OF ACTION (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))**

138.    Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A. The CRA Defendant Failed to Review and Consider all Relevant Information**

139.    The CRA Defendant violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff; specifically, the Dispute Letter evidence.

140.    The CRA Defendant's violations of 15 U.S.C. § 1681i(a)(4) have caused Plaintiff to suffer actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**B. Willful Violations**

141.    The CRA Defendant's violations were willful, rendering it liable for punitive damages in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681(n).

142.    In the alternative, the CRA Defendant was negligent in failing to review and consider all relevant information Plaintiff submitted, which entitles Plaintiff to recovery under 15 U.S.C. § 1681(o).

143.    Plaintiff is entitled to recover actual damages, statutory damages, cost and attorneys' fees from the CRA Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681(n) and § 1681(o).

## FOURTH CAUSE OF ACTION (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))

144.    Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

### A. The CRA Defendant Failed to Delete Disputed and Inaccurate Information.

145.    The CRA Defendant violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

146.    The CRA Defendant's violations of 15 U.S.C. § 1681i(a)(5)(A) have resulted in Plaintiff suffering actual damages, including, but not limited to:

damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

## B. Willful Violations

147.    The CRA Defendant's violations were willful, rendering it liable for punitive damages in an amount to be determined by the Court and pursuant to 15 U.S.C. § 1681(n).

148.    In the alternative, the CRA Defendant was negligent, which entitles Plaintiff to recovery pursuant to 15 U.S.C. § 1681(o).

149.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from the CRA Defendant in an amount to be determined by the Court and pursuant to 15 U.S.C. § 1681(n) and § 1681(o).

## PRAYER FOR RELIEF

150.    WHEREFORE, Plaintiff prays for judgment as follows:

a.  For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;

b.  Award statutory and actual damages pursuant to 15 U.S.C. § 1681(n);

c.  Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681(n);

d.  Award attorneys' fees and costs of suit incurred herein pursuant to 15 U.S.C. §§ 1681(n) and 1681(o);

e.  For determination by the Court that Defendants policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681(n), *et seq*.; and

f.  For determination by the Court that Defendants policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681(o)

Respectfully submitted,

Dated: October 7th, 2022

/s/ *Joey Kimbrough*

Joey Kimbrough

Plaintiff

Joeykokomo2002@yahoo.com

(765) 437-8451