UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOEY KIMBROUGH, | Case No. 1:22-cv-01993-TWP-MJD |
| Plaintiff, | |
| v. | **MEMORANDUM OF LAW SUPPORTING MOTION OF DEFENDANT AMERICAN EXPRESS NATIONAL BANK TO COMPEL ARBITRATION** |
| AMERICAN EXPRESS COMPANY AKA AMERICAN EXPRESS NATIONAL BANK | |
| and | |
| TRANS UNION LLC | |
| Defendants. | |

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq. (the "FAA"), defendant American Express National Bank ("American Express"), by and through its counsel, respectfully files this Memorandum of Law Supporting Motion to Compel Arbitration (the "Motion"), seeking an order compelling plaintiff Joey Kimbrough ("Kimbrough") to arbitrate his claims against American Express pursuant to the terms of the arbitration provision contained within the credit card agreements governing Kimbrough's American Express credit card accounts at issue (the "Cardmember Agreements"). American Express further seeks to stay this case until the completion of arbitration. In support, American Express states as follows:

## I.    INTRODUCTION

By the express terms of the binding arbitration agreements between the parties (the "Arbitration Agreements"), Kimbrough's claims against American Express must be arbitrated. Kimbrough initiated this action against American Express alleging claims for violations of the Fair Credit Reporting Act, 15 U.S.C § 1681, et seq. (the "FCRA"). Instead of initiating an arbitration proceeding as required by the Arbitration Agreements, Kimbrough asserts his claims against

American Express in this Court. American Express elects to arbitrate Kimbrough's claims pursuant to the parties' Arbitration Agreements, which permit <u>either</u> party to elect arbitration of claims against them <u>at any time</u>.

As demonstrated below, the Arbitration Agreements are valid and enforceable agreements to arbitrate under both the FAA and Utah law (which applies here pursuant to the choice-of-law provision also contained in the Cardmember Agreements between the parties). In addition, the Arbitration Agreements completely encompass the claims in this lawsuit. Specifically, the Arbitration Agreements broadly encompass "any current or future claim, dispute or controversy relating to [Kimbrough's] Account(s), this Agreement, or any agreement or relationship [Kimbrough has] or had with [American Express]," and states that it applies to "claims based upon contract, tort, fraud, statute, regulation, common law and equity."

By the terms of the Arbitration Agreements, and pursuant to the FAA, this controversy must be resolved in arbitration rather than in further proceedings before this Court. Importantly, the FAA mandates a liberal policy favoring the enforcement of arbitration agreements and requires that any doubts regarding whether a dispute is subject to arbitration be resolved in favor of arbitration. Emphasizing this policy, the Supreme Court's decision in <u>AT&T Mobility v. Concepcion</u>, 563 U.S. 333, 344 (2011), makes absolutely clear that arbitration agreements must be enforced as written. To that end, courts have stated resoundingly that the FAA shall be construed broadly in favor of arbitration. Indeed, in <u>Epic Systems Corporation v. Lewis</u>, 138 S. Ct. 1612 (2018), the United States Supreme Court again reiterated the FAA mandate that arbitration agreements be enforced. This is consistent with other decisions from the United States Supreme Court, and this Court, that have confirmed that the FAA, which unquestionably applies here,

"reflects an 'emphatic federal policy in favor of arbitral dispute resolution'"[1] and that the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"[2] See Kinkle v. Equifax Info. Servs., LLC, No. 123CV00358JMSTAB, 2023 WL 4105804, at *1 (S.D. Ind. June 21, 2023) ("The Federal Arbitration Act codifies a strong federal policy in favor of enforcing arbitration agreements.").

The Arbitration Agreements here are valid under applicable law, and Kimbrough's claims fall well within their scope. Indeed, the Arbitration Agreements expressly permit either party to elect binding arbitration. American Express respectfully requests that the Court enter an order compelling Kimbrough to arbitrate his claims here and staying this action pending arbitration.

## II. BACKGROUND

### A. The Accounts And The Arbitration Agreement

Kimbrough applied for, and American Express opened, the following accounts: (1) Hilton Honors Card ending in 61004; (2) Platinum Delta SkyMiles Business Card ending in 61007; (3) Business Platinum Card ending in 71005; (4) Hilton Honors Ascend Card ending in 01002; and (5) Platinum Delta SkyMiles Business Card ending in 41007 (collectively, the "Accounts").[3]

---

[1] KPMG LLP v. Cocchi, 565 U.S. 18, 21 (2011) (per curiam) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985)).

[2] Concepcion, 563 U.S. at 344; see also Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp., 559 U.S. 662, 683 (2010) ("[u]nderscoring the consensual nature of private dispute resolution" is the notion that "parties are 'generally free to structure their arbitration agreements as they see fit'" (citations omitted).)

[3] The Hilton Honors Card ending in 61004 and the Hilton Honors Card ending in 01002 were issued to Kimbrough only, while the Platinum Delta SkyMiles Business Card ending in 61007, the Business Platinum Card ending in 71005, and the Platinum Delta SkyMiles Business Card ending in 41007 were issued to Kimbrough and his companies (JMC Auto Works LLC, Burnetts Tipton LLC, and Burnett's North LLC, respectively). Kimbrough is the only plaintiff in this dispute. However, since Kimbrough's Complaint repeatedly references his "commercial" account, (see ECF No. 1 ¶¶ 78, 85–86, 97, 119), American Express also includes the cardmember agreements

(Declaration of Keith Herr (the "Herr Decl.") ¶ 3.) As it does with all American Express card accounts it opens, American Express mailed Kimbrough the physical American Express cards along with the applicable Cardmember Agreements when he opened the Accounts. (Id. ¶ 4 & Exhs. A-1 – A-5.) All American Express cardmember agreements, including Kimbrough's, provide that use of the card constitutes acceptance of the agreement. (Id.) Kimbrough thereafter used the Accounts. (Id. ¶ 6 & Exhs. B-1 – B-5.)

Like all other American Express cardmember agreements, the Cardmember Agreements include a section entitled "Claim Resolution." (Id., Exhs. A-1 – A-5, "Claim Resolution.") This section provides, in pertinent part:

> **Claims Resolution**
>
> . . . You may reject the arbitration provision by sending us written notice within 45 days after your first card purchase. See Your Right to Reject Arbitration below.
>
> For this section, you and us includes any corporate parents, subsidiaries, affiliates or related persons or entities. Claim means any current or future claim, dispute or controversy relating to your Account(s), this Agreement, or any agreement or relationship you have or had with us, except for the validity, enforceability or scope of the Arbitration provision. Claim includes but is not limited to: (1) initial claims, counterclaims, crossclaims and third-party claims; (2) claims based upon contract, tort, fraud, statute, regulation, common law and equity; (3) claims by or against any third party using or providing any product, service or benefit in connection with any account; and (4) claims that arise from or relate to (a) any account created under any of the agreements, or any balances on any such account, (b) advertisements, promotions or statements related to any accounts, goods or services financed under any accounts or terms of financing, (c) benefits and services related to card membership (including fee-based or free benefit programs, enrollment services and rewards programs) and (d) your application for any account . . .
>
> **Arbitration**
>
> You or we may elect to resolve any claim by individual arbitration. Claims are decided by a neutral arbitrator.

---

for these additional accounts to show that this dispute is subject to mandatory arbitration even if Kimbrough's businesses were included in this dispute.

> If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or have a jury trial on that claim. Further, you and we will not have the right to participate in a representative capacity or as a member of any class pertaining to any claim subject to arbitration. Arbitration procedures are generally simpler than the rules that apply in court, and discovery is more limited. The arbitrator's decisions are as enforceable as any court order and are subject to very limited review by a court. Except as set forth below, the arbitrator's decision will be final and binding. Other rights you or we would have in court may also not be available in arbitration.
>
> **Initiating Arbitration**
>
> . . .
>
> You or we may otherwise elect to arbitrate any claim at any time unless it has been filed in court and trial has begun or final judgment has been entered. . .
>
> **Continuation**
>
> This section will survive termination of your Account . . .

(Id., Exhs. A-1 – A-5.) Kimbrough kept the issued American Express cards and used the Accounts, thereby accepting the terms of the Cardmember Agreements, including the Arbitration Agreements. (Id. ¶ 6 & Exhs. B-1 – B-5.) Additionally, following receipt of the cards, Kimbrough did not reject the Arbitration Agreements by submitting timely written notice to American Express as he was permitted to do. (Id. ¶ 5.) Specifically in this regard, the Arbitration Agreements provide:

> You may reject this provision by sending a written rejection notice to us at: American Express, P.O. Box 981556, El Paso, TX 79998. Go to americanexpress.com/reject for a sample rejection notice. Your rejection notice must be mailed within 45 days after your first card purchase. Your rejection notice should state that you reject the Arbitration provision and include your name, address, Account number and personal signature.

(Id., Exhs. A-1 – A-5.)

**B.     Kimbrough's Claims Against American Express**

On December 7, 2022, Kimbrough filed the Complaint, alleging that American Express allegedly failed to conduct a reasonable investigation of his dispute and reported inaccurate

tradelines to his credit report. (See generally, Complaint at ECF No. 1.) Kimbrough asserts that this alleged conduct violated the FCRA, and brings claims for violation of that statute. (See id.)

### III.   ARGUMENT

A.   **Kimbrough's Claims Are Subject To Binding Arbitration Pursuant To The Arbitration Agreements And Settled Authority.**

1.   **Under The FAA, This Court Must Compel Arbitration Pursuant To The Terms Of The Arbitration Agreements.**

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see also Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."). As the Supreme Court has confirmed time and again, this provision of the FAA "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is matter of contract,'" such that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." Concepcion, 563 U.S. at 339 (citations omitted).[4] "A court must compel arbitration under the FAA when: (1) a valid agreement to arbitrate exists; (2) the dispute falls within the scope of that agreement; and (3) the plaintiff has refused to proceed to arbitration in accordance with the arbitration agreement." *Kinkle v. Equifax Info. Servs., LLC*, No. 123CV00358JMSTAB, 2023 WL

---

[4] The U.S. Supreme Court has made clear that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. See, e.g., Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 277 (1995); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401 (1967). There is no question that the FAA applies to this dispute between Kimbrough, an Indiana resident, and American Express, a national banking association located in Utah.

4105804, at *1 (S.D. Ind. June 21, 2023) (citing *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006).

As the Supreme Court further confirmed, the "overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." Id. at 344. By consenting to bilateral arbitration, the "parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." Stolt-Nielsen, 559 U.S. at 685 (citations omitted). In 2018, the Supreme Court reaffirmed the broad holding of its prior, seminal decision in Concepcion. See Epic Sys. Corp., 138 S. Ct. at 1632. An arbitration agreement governed by the FAA, like the Arbitration Agreements here, therefore is presumed to be valid and enforceable. See Olive Wine Co., Inc. v. Ball Metal Beverage Container Corp., No. 1:13–cv–00062–RLY–TAB, 2013 WL 5603937, at *2 (S.D. Ind. Oct. 11, 2013) ("The Federal Arbitration Act [] provides that '[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable.'" (citing 9 U.S.C. § 2)).

### 2. The Arbitration Agreements Are Valid And Kimbrough Did Not Exercise His Option To Reject Them.

While the FAA exclusively governs the enforceability of the Arbitration Agreements according to their terms, state law governs the determination of whether a valid agreement to arbitrate exists. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." (citation omitted)).

American Express cardmember agreements are expressly governed by a Utah choice-of-law provision. (Herr Decl. ¶ 4 & Exhs. A-1 – A-5.) Thus, while the FAA governs the enforceability of the Arbitration Agreements, Utah law governs the determination of whether a valid agreement to arbitrate exists. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."); Koveleskie v. SBC Capital Markets, Inc., 167 F.3d 361, 367 (7th Cir. 1999) ("In determining whether a valid agreement arose between the parties, a federal court should look to the state law that ordinarily governs the formation of contracts.").

There is no question that the Cardmember Agreements, including the Arbitration Agreements, are valid under Utah law. Utah law provides:

> A credit agreement is binding and enforceable . . . if: (i) the debtor is provided with a written copy of the terms of the agreement; (ii) the agreement provides that any use of the credit offered shall constitute acceptance of those terms; and (iii) after the debtor receives the agreement, the debtor, or a person authorized by the debtor, requests funds pursuant to the credit agreement or otherwise uses the credit offered.

Utah Code Ann. § 25-5-4(2)(e). Further, Utah law expressly allows arbitration provisions to be included in open-end credit agreements. See Utah Code Ann. § 70C-4-102(2)(b) (providing that "[a] creditor may change an open-end consumer credit contract in accordance with this section to include arbitration or other alternative dispute resolution mechanism"); Utah Code Ann. § 70C-4-105(1) (providing that "a creditor may contract with the debtor of an open-end consumer credit contract for a waiver by the debtor of the right to initiate or participate in a class action related to the open-end consumer credit contract").

Consistent with Utah law, American Express provided Kimbrough with the Cardmember Agreements along with the American Express cards when it opened the Accounts. (Herr Decl.

¶ 4.) American Express cardmember agreements provide that use of the credit card constitutes acceptance of the agreement. (Id. ¶ 4 & Exhs. A-1 – A-5.) Kimbrough thereafter kept the issued cards and used the Accounts, thereby accepting the terms of the Cardmember Agreements, including the Arbitration Agreements. (Id. ¶ 6 & Exhs. B-1 – B-5.) Hence, as other courts have found, the Arbitration Agreements are valid and enforceable agreements to arbitrate under Utah law. See, e.g., Aneke v. Am. Express Travel Related Servs., Inc., 841 F. Supp. 2d 368, 376, 378 (D.D.C. 2012) (holding that arbitration agreement is "valid and enforceable under Utah law, which is the relevant state law in this case" and rejecting plaintiffs' "policy argument about the limits of arbitration and the prejudicial impact it has on their statutory claims"); Khanna v. Am. Express Co., No. 11 Civ. 6245 (JSR), 2011 WL 6382603, at *3–4 (S.D.N.Y. Dec. 14, 2011) (arbitration agreement is "binding and enforceable" under Utah law where cardmember agreement provided that use of the card constituted assent to the agreement's terms and plaintiff used the card); Miller v. Corinthian Colls., Inc., 769 F. Supp. 2d 1336, 1348–49 (D. Utah 2011) (holding that arbitration provision is not substantively or procedurally unconscionable under Utah law); Smith v. ComputerTraining.com Inc., 772 F. Supp. 2d 850, 856–57 (E.D. Mich. 2011) (enforcing Utah choice-of-law provision and finding that arbitration provision is not unconscionable under Utah law), aff'd, 531 F. App'x 713 (6th Cir. 2013); Wynne v. Am. Express Co., No. 2:09-CV-00260-TJW, 2010 WL 3860362, at *7 (E.D. Tex. Sept. 30, 2010) (enforcing Utah choice-of-law provision and finding that arbitration provision is not unconscionable under Utah or Texas law); Spann v. Am. Express Travel Related Servs. Co., Inc., 224 S.W.3d 698, 718 (Tenn. Ct. App. 2006) (upholding American Express's Arbitration Provision under Utah law against an unconscionability challenge).

Despite being provided 45 days to do so in the Cardmember Agreements, Kimbrough did not exercise the option American Express provided him to opt-out of the Arbitration Agreements. (Herr Decl. ¶ 5.) Following receipt of the Cardmember Agreements, Kimbrough not only did not exercise his right to reject the Arbitration Agreements but also continued to make charges to, or otherwise use, the Accounts. (Id. ¶ 6 & Exhs. B-1 – B-5.) Accordingly, Kimbrough is bound by the valid Arbitration Agreements in the Cardmember Agreements.

### 3. The Arbitration Agreements Clearly Encompasses Kimbrough's Claims.

Once it is determined that the parties have entered into an arbitration agreement, as Kimbrough and American Express did, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986); see also McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co., 858 F.2d 825, 832 (2d Cir. 1988) (noting the distinction between "broad" clauses that purport to refer to arbitration all disputes arising out of a contract and "narrow" clauses that limit arbitration to specific types of disputes). Where the clause is broad, as the Arbitration Agreements here are, there is a heightened presumption of arbitrability such that "'[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" AT&T Tech., 475 U.S. at 650; accord Collins & Aikman Products Co. v. Building Systems, Inc., 58 F.3d 16, 20 (2d Cir. 1995) (holding that, where the clause is broad, "then there is a presumption that the claims are arbitrable"). In order to rebut the presumption, the party resisting arbitration must show that the Arbitration Agreement does not encompass the claims at issue. Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 92 (2000). As a matter of law, "any doubts concerning the scope of

arbitrable issues should be resolved in favor of arbitration." See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).

There can be no genuine dispute that Kimbrough's claims are encompassed by the Arbitration Agreements. The Arbitration Agreements expressly cover "any current or future claim, dispute or controversy relating to [Kimbrough's] Account(s), this Agreement, or any agreement or relationship [Kimbrough has] or had with [American Express] . . . ." (Herr Decl. ¶ 4 & Exhs. A-1 – A-5.) The Arbitration Agreements go on to explain that "Claim" expressly includes initial claims, such as Kimbrough's. (Id.) Additionally, the Arbitration Agreements provide that they apply to "claims based upon contract, tort, fraud, statute, regulation, common law and equity." (Id.) Further, the Cardmember Agreements contain a provision entitled "Credit Reports," which states in relevant part "[y]ou agree that we will give information about the Account to credit reporting agencies. We will tell a credit reporting agency if you fail to comply with any term of this Agreement. This may have a negative impact on your credit report . . . ." (Id.)

This language is more than broad enough to cover Kimbrough's claims at issue here because they directly relate to Kimbrough's Account and Cardmember Agreements with American Express, as well as Kimbrough's relationship with American Express. Indeed, Kimbrough alleges that American Express violated the FCRA in connection with disputed tradelines on his Accounts. (See generally, Complaint at ECF No. 1.) As such, there is no question that the Arbitration Agreements cover Kimbrough's claims. In addition, the Complaint asserts statutory claims against American Express, which are expressly covered by the Arbitration Agreements. And the law is clear that statutory claims are subject to arbitration. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) ("it is by now clear that statutory claims may be the subject of arbitration"); Mitsubishi Motors, 473 U.S. at 628 (by agreeing to arbitrate a statutory claim, a party "does not

forgo the substantive rights afforded by the statute [but] submits to their resolution in an arbitral . . . forum."); Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987) ("The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims."). In light of the foregoing, there is no question that Kimbrough's claims fall squarely within the Arbitration Agreements.

Given that Kimbrough's claims are subject to the Arbitration Agreements, this matter must proceed in arbitration. The Arbitration Agreements provide that "[y]ou or we may elect to resolve any claim by individual arbitration." (Herr Decl. ¶ 4 & Exhs. A-1 – A-5.) As the Supreme Court ruled in Concepcion, arbitration agreements must be enforced as written. 563 U.S. at 344. Accordingly, because the Arbitration Agreements are valid and enforceable and the claims are encompassed by the Arbitration Agreements, this Motion should be granted and this action should be sent to arbitration.

**B.     This Action Should Be Stayed Pending Arbitration.**

The FAA provides that a court, upon determination that an action before it is subject to an enforceable arbitration provision, "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; see Olive Wine Co., 2013 WL 5603937, at *5 (granting motion to compel arbitration and staying proceedings). Accordingly, American Express requests that this Court stay the action pending completion of arbitration between the parties.

## IV.     CONCLUSION

For the foregoing reasons, American Express respectfully request that the Court grant the Motion and compel the parties to arbitrate Kimbrough's claims pursuant to the express terms of

the valid and enforceable Arbitration Agreements. Further, American Express respectfully requests that the Court stay this action pending completion of the arbitration proceedings.

Dated: August 15, 2023.                    Respectfully submitted,

By: /s/ *Adam R. Hoock*
Stephen J. Newman
California Bar No. 181570
snewman@Steptoe.com
Adam R. Hoock
Florida Bar No. 118264
California Bar No. 340811
ahoock@Steptoe.com
**STEPTOE & JOHNSON LLP**
2029 Century Park East, 18th Floor
Los Angeles, CA 90067
Telephone: +1 213 439 9400
Fax: +1 213 439 9599
docketing@steptoe.com

Attorneys for Defendant *American Express National Bank*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 15, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and certify that a true and correct copy of the foregoing was provided to all parties and counsel of record.

*/s/ Adam R. Hoock*
Adam R. Hoock