**FILED**

**08/18/2023**

**U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
Roger A.G. Sharpe, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT of INDIANA
Indianapolis Division

| | |
|---|---|
| JOEY KIMBROUGH,<br><br>   Plaintiff,<br><br>v.<br><br>AMERICAN EXPRESS COMPANY AKA AMERICAN EXPRESS NATIONAL BANK;<br><br>and<br><br>TRANS UNION LLC (*settled and dismissed*)<br><br>   Defendants. | Case No. **1:22-cv-1993-TWP-MJD**<br><br>Honorable Tanya Walton Pratt<br>Magistrate Judge Mark J. Dinsmore |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

**I. INTRODUCTION**

Plaintiff Joey Kimbrough ("Plaintiff" or "Kimbrough"), Pro Se, submits this memorandum of law in strong opposition to Defendant American Express National Bank's ("AMEX" or "Defendant") motion to compel arbitration. While the Federal Arbitration Act ("FAA") supports a policy in favor of arbitration, it does not obviate the application of state law contract defenses. The core issue in this dispute pertains to the enforceability of the arbitration provision contained within the Cardmember Agreements. The arbitration clause, as proffered by

AMEX, is both procedurally and substantively unconscionable. This position is further bolstered by AMEX's contradictory behavior, notably its decision to initiate a separate legal proceeding in Howard Superior Court under the case caption **American Express National Bank v. Joey Kimbrough, 34D04-2112-CC-003201**, filed on 12/08/2021. Such actions underscore the inequities inherent in enforcing the arbitration clause and weigh heavily against its enforceability.

## II. FACTUAL BACKGROUND

Plaintiff Joey Kimbrough ("Kimbrough") and Defendant American Express National Bank ("AMEX") entered into a Cardmember Agreement, which incorporates an arbitration provision. This provision broadly encompasses any claim, dispute, or controversy linked to the card account, the agreement, or any association with the bank. Notably, disputes concerning the provision's validity, enforceability, or scope stand as exceptions to this agreement.

**Arbitration Procedures and Provisions**:

- The arbitration procedures outlined in the agreement are characterized by their simplicity relative to court rules, and they permit only limited discovery.

- Decisions made by arbitrators are binding and subject to minimal court review.

- Despite the presence of a mechanism allowing for the rejection of the arbitration provision within 45 days of the first card transaction, AMEX failed to duly inform Kimbrough about this right, contravening the mandates of the Federal Arbitration Act.

- The arbitration process mandates the submission of a claim notice before its commencement, with subsequent claims typically directed to either JAMS or AAA.

- The proceedings are marked by confidentiality, though claims can be reported to relevant government authorities.

- A significant lacuna in the provision is its omission of class-action arbitration, a deviation from Supreme Court precedent, especially as seen in the case of *New Prime v. Oliveira*.

- Ambiguity also exists regarding the allocation of arbitration fees, potentially highlighting a dearth of genuine negotiation.

In October 2022, Kimbrough lodged a complaint, asserting that AMEX did not adequately investigate his dispute and inaccurately reflected credit tradelines. The central contention revolves around the alleged erroneous inclusion of business credit accounts on Kimbrough's personal credit profile.

Complicating the narrative, in an unrelated event, AMEX launched a legal action against Kimbrough in Howard Superior Court, bearing the case number *34D04-2112-CC-003201*. This ongoing state court endeavor exemplifies AMEX's preference for litigation over arbitration, casting shadows over the consistent application and legitimacy of the Cardmember Agreements' arbitration clause.

### III. ARGUMENTS AND AUTHORITIES

**A. The Arbitration Agreement is Both Procedurally and Substantively Unconscionable.**

1. **Procedural Unconscionability**: AMEX presented the arbitration agreement to Kimbrough as part of a standard-form contract without a genuine opportunity for negotiation. This "take it or leave it" approach, emblematic of contracts of adhesion, represents an imbalance of power and is inherently unfair. As stated in ***Hooters of Am., Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999)**, courts have found such hidden terms to be procedurally unconscionable when one party is surprised or lacks a meaningful choice.

2. **Substantive Unconscionability**: The terms of the arbitration agreement disproportionately favor AMEX. The limitations on discovery and procedural rights place consumers, like Kimbrough, at a distinct disadvantage. Additionally, the ambiguity regarding the payment of arbitration fees, as highlighted in the various versions, signals a lack of genuine negotiation.

**B. The Scope of the Arbitration Agreement Does Not Clearly Encompass the Present Dispute.**

1. **Overreach of the Agreement**: Drawing upon the precedent set in ***Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995)**, the breadth of the arbitration agreement raises concerns. Unless there is clear and unequivocal language, significant claims like those under the FCRA should not be compelled into arbitration.

2. **Statutory Claims**: The U.S. Supreme Court, in cases such as ***Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991)**, has emphasized that statutory

claims can be arbitrable, but there must be a clear and unequivocal waiver of such rights in the arbitration agreement.

**C. Defendant's Dual Pursuit of State Court Proceedings Renders the Arbitration Agreement Unconscionable.**

1. **Inequitable Conduct**: AMEX's simultaneous pursuit of state court proceedings and arbitration represents a clear inconsistency, conflicting with the principle of good faith and fair dealing, as highlighted in the *Restatement (Second) of Contracts § 205* as outlined in the Uniform Commercial Code ("UCC").

2. **Waiver of Arbitration Right**: As established in *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co., Inc.*, **969 F.2d 585 (7th Cir. 1992)**, parties can waive their arbitration rights through inconsistent actions.

**D. The FAA Allows for the Invalidity of Arbitration Clauses Based on Contract Defenses.**

1. While the FAA underscores the enforcement of arbitration agreements, it does not negate generally applicable contract defenses, such as unconscionability. The unconscionability of the arbitration clause in this instance offers a valid defense against its enforcement.

**E. Defendant's Reliance on Case Law is Misplaced.**

1. While AMEX cites cases like *AT&T Mobility v. Concepcion* and *Epic Systems Corporation v. Lewis*, these decisions do not alter the core principle that arbitration

agreements can be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability."

**F. Preservation of Judicial Review is Essential.**

1. The gravity of Kimbrough's FCRA claims calls for the procedural protections provided by courts. Subjecting these claims to arbitration may rob Kimbrough of a just and equitable resolution.

**G. The Arbitration Agreement Violates Supreme Court Precedent.**

1. **Class-action Arbitration**: The agreement's omission of provisions for class-action arbitration contravenes the Supreme Court's decision in *New Prime v. Oliveira*, **139 S. Ct. 532, 541 (2019)**. This ruling emphasized that class arbitration should be presumed available unless parties have "clearly and unmistakably" agreed otherwise. The ambiguity in AMEX's agreement on this matter renders it vulnerable to challenge.

2. **Inadequate Notification and Right to Reject**: As per the Federal Arbitration Act, arbitration agreements are unenforceable if the cardholder isn't given "adequate notice" of the right to opt out. AMEX's failure to duly inform Kimbrough of his right to reject the arbitration agreement within the stipulated 45-day timeframe further supports the plaintiff's stand against arbitration.

**H. AMEX's Opportunistic Approach to Dispute Resolution Should Not be Countenanced.**

1. **Inconsistency in Enforcement**: AMEX's decision to initiate a separate state court action against Kimbrough, while concurrently pushing for arbitration in this matter, indicates an opportunistic and inconsistent approach to dispute resolution. Such selective enforcement undermines the very principles of contract law and further emphasizes the unconscionability of the arbitration clause.

2. **Lack of Mutual Assent**: As highlighted in *AT&T Mobility LLC v. Concepcion*, **563 U.S. 333 (2011)**, while the Supreme Court upheld certain arbitration agreements, it also recognized the importance of ensuring parties are not unfairly surprised by hidden provisions. The buried nature of the arbitration provision within the Cardmember Agreement raises significant concerns about mutual assent.

**I. Preservation of Procedural Safeguards is Paramount.**

1. **Need for a Judicial Forum**: Kimbrough's claims under the FCRA are of significant gravity and necessitate the procedural safeguards and rigor of a judicial forum. Arbitration, by its very nature, lacks some of these safeguards, potentially depriving Kimbrough of a fair and comprehensive examination of his claims.

**J. Unfair Terms Indicate Substantive Unconscionability.**

1. **Ambiguity Over Arbitration Fees**: The arbitration agreement's vagueness regarding who bears the arbitration fees underscores its substantive unconscionability. The potential for exorbitant fees could deter cardholders like Kimbrough from pursuing valid claims, favoring AMEX in any dispute resolution.

2. **Unilateral Power**: The provision allowing either party to compel arbitration "at any time" affords AMEX disproportionate power, creating an unfair advantage. Such one-sided terms further underscore the substantive unconscionability of the agreement, as noted in *Doctor's Assocs., Inc. v. Casarotto,* **517 U.S. 681 (1996)**.

**K. AMEX's Contradictory Stance on Arbitration Undermines Its Position.**

1. **Violation of Own Agreement**: AMEX's decision to initiate state court proceedings against Kimbrough, while simultaneously seeking to enforce the arbitration agreement, is a glaring contradiction. By actively breaching the very agreement they seek to uphold, AMEX's actions cast doubt on their genuine commitment to the arbitration process.

2. **Equitable Treatment**: The principle of equitable treatment demands that parties to a contract act in good faith. AMEX's inconsistent behavior, as evidenced by their dual pursuit of litigation and arbitration, undermines this foundational principle of contract law.

**L. Court Precedents Support the Plaintiff's Position.**

1. **Guidance from Case Law**: Court decisions, including *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co., Inc.*, **969 F.2d 585 (7th Cir. 1992)** and *Mastrobuono v. Shearson Lehman Hutton, Inc.*, **514 U.S. 52 (1995)**, provide a clear roadmap that supports the Plaintiff's stance against compelled arbitration. These precedents emphasize the importance of clear communication, mutual assent, and fair treatment in the enforcement of arbitration agreements.

2. **Protection of Statutory Rights**: Arbitration agreements cannot serve to deprive parties of their statutory rights. The significant claims arising from the FCRA demand thorough scrutiny and should not be relegated to arbitration without an explicit, unambiguous clause indicating their inclusion.

**M. The Arbitration Agreement's Broad Language is Problematic.**

1. **Overreach and Ambiguity**: While AMEX may argue that the arbitration agreement's language is broad enough to encompass the current dispute, the agreement's sweeping generalities are problematic. Ambiguous terms in a contract, particularly in a context as significant as waiving one's right to a court trial, should be narrowly construed against the drafter – in this case, AMEX.

2. **Interpretation against Drafter**: Courts often adopt the principle that any ambiguities in contract language are interpreted against the drafter. Given the potential overreach of the arbitration agreement, any ambiguities therein should work to the disadvantage of AMEX.

**N. The FAA Provides Grounds for Invalidating the Arbitration Clause.**

1. **Grounds for Revocation**: The Federal Arbitration Act (FAA) underscores that arbitration agreements are to be enforced as per their terms. However, it also carves out an exception where grounds exist in law or equity for the revocation of any contract. The substantive and procedural unconscionability evidenced in the current arbitration clause provides such grounds for revocation.

2. **Consistency with Contract Law**: While the FAA promotes the enforceability of arbitration agreements, it doesn't sanction the enforcement of agreements that are inconsistent with fundamental principles of contract law. The FAA, thus, does not override defenses like unconscionability, duress, or fraud.

## O. AMEX's Reliance on Certain Case Law is Misplaced and Inapplicable.

1. **Distinguishing the Cases**: While AMEX might cite cases such as *AT&T Mobility v. Concepcion* and *Epic Systems Corporation v. Lewis* to bolster their position, it's crucial to distinguish the facts and legal issues presented in those cases from the current matter. Neither of these cases nullifies the fundamental principle that arbitration agreements can be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability."

2. **Preservation of Rights**: The cited cases do not change the foundational notion that parties should not be deprived of their substantive rights through arbitration. Especially when those rights are grounded in federal statutes, like the FCRA, which have been enacted to protect consumers from unfair practices.

## P. Judicial Review is Essential for Claims of Significant Public Interest.

1. **Significance of FCRA Claims**: Claims arising from the FCRA are not mere contractual disputes; they touch upon public interest, ensuring fair and accurate credit reporting. Such significant claims serve the public's need to trust credit reporting systems, making them vital to our financial infrastructure.

2. **Limitations of Arbitration**: Arbitration, by its nature, is a private dispute resolution mechanism. Its proceedings are confidential, and its decisions are not typically subject to public scrutiny or appeal. This lack of transparency can be detrimental when claims of public interest, like those under the FCRA, are at stake. By relegating these claims to arbitration, the broader public interest in understanding and learning from such disputes is stifled.

**Q. The Imbalance of Power in Arbitration Proceedings Disadvantages Consumers.**

1. **Inherent Disadvantages for Consumers**: Arbitration, especially when mandated by large corporations with vast resources, often places individual consumers at a significant disadvantage. This is not just in terms of financial resources but also with regard to access to information, legal expertise, and procedural familiarity.

2. **AMEX's Potential Influence**: Given that AMEX is likely to be a repeat player in arbitration forums, there's a risk that arbitrators, even unconsciously, may be biased in their favor, aiming for future appointments. This systemic issue further undermines the fairness and impartiality of arbitration proceedings.

## IV. CONCLUSION

In light of the arguments presented, which highlight both the procedural and substantive unconscionability of the arbitration clause and underscored by relevant case law and Supreme Court decisions, it becomes evident that the enforcement of the arbitration clause poses significant concerns. Moreover, the Defendant, AMEX, through its contradictory actions in

initiating separate state court proceedings, has further cast doubt on its genuine commitment to the arbitration process. Given the importance of preserving the right to judicial review, especially for grave statutory claims such as those brought forth by the Plaintiff, and in the interest of upholding principles of fairness, justice, and informed contractual consent, Kimbrough respectfully urges this Court to deny American Express's Motion to Compel Arbitration. This case should be allowed to proceed in this judicial forum, where the substantive rights of the parties can be properly protected and adjudicated.

Respectfully Submitted,

/s/ Joey Kimbrough
Joey Kimbrough, Plaintiff, Pro Se
1712 Candy Court South
Kokomo, IN 46902
(765) 437-8451
joeykokomo2002@yahoo.com

**Certificate of Service**

I hereby certify that on August 17th, 2023, I electronically filed the foregoing with the Clerk of the Court by email with attachments as is required by the Court. Service was made on counsel by email:

**Distribution:**
All ECF-registered counsel of record via email

Joey Kimbrough
1712 Candy Court South
Kokomo, IN 46902

Respectfully Submitted,
/s/ Joey Kimbrough