UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOEY KIMBROUGH, | Case No. 1:22-cv-01993-TWP-MJD |
| Plaintiff, | **REPLY IN SUPPORT OF MOTION OF DEFENDANT AMERICAN EXPRESS NATIONAL BANK TO COMPEL ARBITRATION** |
| v. | |
| AMERICAN EXPRESS COMPANY AKA AMERICAN EXPRESS NATIONAL BANK | |
| and | |
| TRANS UNION LLC | |
| Defendants. | |

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"), defendant American Express National Bank ("American Express"), by and through its counsel, respectfully files this Reply in support of its Motion to Compel Arbitration (the "Motion") [ECF No. 29], seeking an order compelling plaintiff Joey Kimbrough ("Kimbrough") to arbitrate his claims against American Express pursuant to the terms of the arbitration provisions contained within the credit card agreements governing Kimbrough's American Express credit card accounts at issue (the "Cardmember Agreements"). American Express further seeks to stay this case until the completion of arbitration.

In further support of its Motion, and in response to the arguments raised in Kimbrough's Response in Opposition to Defendant's Motion to Compel Arbitration (the "Response") [ECF No. 35], the Memorandum of Law in Support of Plaintiff's Opposition to Defendant's Motion to Compel Arbitration (the "Opposition Memorandum") [ECF No. 43], Plaintiff's Response in Opposition to Declaration of Keith Herr (the "Declaration Opposition") [ECF No. 37], Plaintiff's Response in Opposition to Defendant's Exhibit A1 – A5 (the "Opposition to Exhibit A") [ECF

No. 38], and Plaintiff's Response in Opposition to Defendant's Exhibits B1 – B5 (the "Opposition to Exhibit B") [ECF No. 39], American Express states as follows:

## I.  INTRODUCTION

By the express terms of the binding arbitration agreements between the parties (the "Arbitration Agreements"), Kimbrough's claims against American Express must be arbitrated. Kimbrough initiated this action against American Express alleging claims for violations of the Fair Credit Reporting Act, 15 U.S.C § 1681, et seq. (the "FCRA"). *See* Complaint [ECF No. 1] ¶¶ 111–126. Pursuant to the terms of the Arbitration Agreements, American Express elects to arbitrate Kimbrough's claims. The Arbitration Agreements unambiguously permit <u>either</u> party to elect arbitration of claims against them <u>at any time</u>.

As fully articulated in American Express's Memorandum of Law (the "Memorandum") [ECF No. 30], the Arbitration Agreements are valid and enforceable agreements to arbitrate under both the FAA and Utah law (which applies here pursuant to the choice-of-law provision also contained in the Cardmember Agreements between the parties). In addition, the Arbitration Agreements completely encompass the claims in this lawsuit, which are claims for alleged violations of the FCRA relating to Kimbrough's accounts. *See* Compl. ¶¶ 111–126. The Arbitration Agreements broadly encompass "any current or future claim, dispute or controversy relating to [Kimbrough's] Account(s), this Agreement, or any agreement or relationship [Kimbrough has] or had with [American Express]," and states that it applies to "claims based upon contract, tort, fraud, statute, regulation, common law and equity."

By the terms of the Arbitration Agreements, and pursuant to the FAA, this controversy must be resolved in arbitration rather than in further proceedings before this Court. This result comports with the FAA' liberal policy favoring the enforcement of arbitration agreements and

requiring that any doubts regarding whether a dispute is subject to arbitration be resolved in favor of arbitration. *See AT&T Mobility v. Concepcion*, 563 U.S. 333, 344 (2011); *Epic Systems Corporation v. Lewis*, 138 S. Ct. 1612 (2018); *Kinkle v. Equifax Info. Servs., LLC*, No. 123CV00358JMSTAB, 2023 WL 4105804, at *1 (S.D. Ind. June 21, 2023) ("The Federal Arbitration Act codifies a strong federal policy in favor of enforcing arbitration agreements.").

The Arbitration Agreements here are valid under applicable law, and Kimbrough's claims against American Express fall well within their scope. In his Response, Opposition Memorandum, Declaration Opposition, Opposition to Exhibit A, and Opposition to Exhibit B (together, the "Response Filings"), Kimbrough raises a series of arguments against compelling arbitration: (1) the Arbitration Agreements are procedurally and substantively unconscionable; (2) American Express waived arbitration by filing a collections action in state court; (3) the Arbitration Agreements violate Indiana public policy, which authorizes the Arbitration Agreements to be invalidated due to fraud, duress, and unconscionability; and (4) Kimbrough's claims against American Express are outside the scope of the Arbitration Agreements. *See generally* Resp. Filings. None of these arguments has any merit. Further, Kimbrough's arguments against the Court's consideration of the evidence contained in the Declaration of Keith Herr, the Cardmember Agreements, and the billing statements for his Accounts are speculative and fail as a matter of law.

Here, the Arbitration Agreements expressly permit either party to elect binding arbitration. American Express has done so. Pursuant to the clear agreement terms, American Express respectfully requests that the Court grant its Motion and enter an order compelling Kimbrough to arbitrate his claims here and staying this action pending arbitration.

## II.   ARGUMENT

Under the FAA, "[a] party aggrieved by the alleged failure . . . of another to arbitrate under

a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* at § 2. Courts grant motions to compel arbitration when: (1) there is an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018). Courts apply a summary judgment analysis to assess whether to compel arbitration. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). "[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.*

Kimbrough challenges the enforceability of the Arbitration Agreements under vague theories of unconscionability, public policy, and waiver, as well as the scope of the Arbitration Agreements as they apply to his FCRA claim against American Express. Without proffering any contrary evidence in the record, Kimbrough further contests American Express's evidence in support of compelling arbitration by casting broad, unsupported speculations concerning his Accounts. All of these arguments are baseless and must be rejected.

A.  **The Arbitration Agreements Are Neither Procedurally Nor Substantively Unconscionable.**

Kimbrough raises a number of arguments that the Cardmember Agreements are procedurally and substantively unconscionable, including claims that they are impermissible take-it-or-leave-it adhesion contracts, that the terms heavily favor American Express without any bargaining power for the cardholder, that there is ambiguity regarding the payment of arbitration fees, that the terms are buried and difficult to comprehend, and that the agreements violate the

rights to class-action proceedings and a public forum for substantive rights, like the FCRA, with established procedures. *See generally* Resp. at 2; Opp'n Memo. None of these arguments have any legal basis.

The Seventh Circuit has repeatedly rejected the unconscionability argument for standardized contracts. *See Oblix, Inc. v. Winiecki*, 374 F.3d 488, 491 (7th Cir. 2004) ("Standard-form agreements are a fact of life, and given § 2 of the Federal Arbitration Act, 9 U.S.C. § 2, arbitration provisions in these contracts must be enforced unless states would refuse to enforce all off-the-shelf package deals."); *Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903, 905–06 (7th Cir. 2004) ("Is enforcement of this clause unconscionable? How could it be? Arbitration is just a forum; people may choose freely which forum will resolve their dispute. This is so when the agreement concerns venue within a judicial system, and equally so when the agreement specifies a non-judicial forum." (citations omitted)). This Court has also rejected a generalized unconscionability argument:

> As to the conscionability of the provisions, the court finds that there is no indication in the record that there was a substantial inequity in the bargaining power of the parties, and even if there had been, "mere inequality in bargaining ... is not a sufficient reason to hold that arbitration agreements are never enforceable...." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 32 (1991). And the Seventh Circuit has made it clear that the courts should avoid interfering in arbitration agreements, stating that "arbitration is just a forum; people may choose freely which forum will resolve their dispute" Carbajal v. H & R Block Tax Servs., Inc., 372 F.3d 903, 905-06 (7th Cir. 2004), which appears to have been done here. **The arbitration provisions were not buried or hidden in the Agreements, making it difficult or impossible for the Defendants to have agreed to their terms. Rather, they appear in the same font as the other text of the Agreements, often under the heading of "Arbitration of Disputes."**

*Twist v. Arbusto*, No. 4:05-CV-0187-JDT-WGH, 2006 WL 1547083, at *9 (S.D. Ind. June 2, 2006) (emphasis added).

Here, the terms of the Arbitration Agreements, including the right to reject arbitration, are

displayed prominently under the heading "Claims Resolution." *See* K. Herr Exhs. A1 – A5 [ECF No. 30-2] at 11, 27, 40, 56 & 74. Additionally, the provision allowing for the rejection of the arbitration provision "within 45 days after your first card purchase" appears in bold font. This completely contradicts Kimbrough's argument that American Express somehow failed "to duly inform Kimbrough of his right to reject the arbitration agreement within the stipulated 45-day timeframe." Opp'n Memo. at 6.

Likewise, there is no ambiguity or vagueness concerning the payment of arbitration fees, despite Kimbrough's arguments to the contrary. *See id.* at 7. The Arbitration Agreements clearly provide that the cardholder is responsible for his share of the arbitration fees "only up to the amount of the filing fees you would have incurred if you had brought a claim in court" and that American Express "will be responsible for any additional arbitration fees." *See* K. Herr Exhs. A1 – A5 [ECF No. 30-2] at 12, 28, 41, 57 & 75. Thus there is no "potential for exorbitant fees [that] could deter cardholders like Kimbrough from pursuing valid claims" in arbitration, *see* Opp'n Memo. at 7, as the fees are identical to those that a cardholder would incur in court.

Nor is there any merit to Kimbrough's argument that the waiver of class claims in the Arbitration Agreements renders the agreements unconscionable and unenforceable. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011) (holding that the FAA preempted California law that deemed unconscionable an arbitration clause that disallowed classwide procedures); *Spann v. Am. Exp. Travel Related Servs. Co.*, 224 S.W.3d 698, 717 (Tenn. Ct. App. 2006) (holding that class arbitration waiver clause in cardmember agreements was neither procedurally nor substantively unconscionable under Utah law); *see also Kaba v. Aerotek, Inc.*, No. 123CV00084JMSTAB, 2023 WL 2787958, at *2 (S.D. Ind. Apr. 4, 2023) ("The arbitration agreement in this case is not substantively unconscionable because it includes a waiver of class

action proceedings." (applying federal and Maryland law)). Moreover, Kimbrough's argument is irrelevant because he does not purport to bring any class claims.

In sum, none of Kimbrough's arguments support a finding of unconscionability. The Court should enforce the Arbitration Agreements and compel arbitration.

**B.    Utah Law Applies to the Arbitration Agreements, So Indiana Public Policy Is Not Applicable.**

As specified in the Memorandum, the Cardmember Agreements provide that Utah law governs the determination of whether there is a valid agreement to arbitrate. *See* Memo. at 8-10. Thus, the proper law to apply is Utah law, not Indiana law. *See Hoopes v. Gulf Stream Coach, Inc.*, No. 1:10-CV-365, 2012 WL 1029352, at *4 (N.D. Ind. Mar. 26, 2012) (applying choice of law provisions in arbitration agreement stating that Michigan law applies to disputes between the parties). "Indiana choice of law doctrine favors contractual stipulations as to governing law." *Allen v. Great Am. Rsrv. Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002).

The Arbitration Agreements here fully comport with Utah law and policy. *See* Memo. at 8–10. Kimbrough does not even address this argument in this Response Filings and, thus, has waived the issue. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Zheng v. Austin*, No. 121CV02310JMSMKK, 2023 WL 167437, at *4 (S.D. Ind. Jan. 12, 2023) ("[Plaintiff] did not respond to the arguments Defendants set forth in their response brief, so has waived any opposition to those arguments."); *Content & Com., Inc. v. Chandler*, No. 120CV02488JMSDLP, 2021 WL 2634605, at *6 (S.D. Ind. June 25, 2021) (finding waiver of an argument where the plaintiffs did not address it in their response to motion to dismiss); *see also McMasters v. United States*, 260 F.3d 814, 818 (7th Cir. 2001) (a party's *pro se* status does not excuse a failure to respond). Instead, Kimbrough attempts to insert an argument regarding Indiana public policy. *See* Resp. at 3–4. Even if Indiana law did

apply (which it does not), Kimbrough has offered no evidence to support his claims arguments of fraud or duress regarding the Cardmember Agreements. Indiana public policy, just as federal policy, favors enforcement of arbitration provisions. *See Welty Bldg. Co. v. Indy Fedreau Co., LLC*, 985 N.E.2d 792, 798 (Ind. Ct. App. 2013).

**C.     American Express Has Not Waived the Right to Compel Arbitration.**

Kimbrough argues that American Express's pursuit of state court collection proceedings constitutes a waiver of its right to compel arbitration here. *See* Opp'n Memo. at 5–8. Not so. Courts in this Circuit, and elsewhere, have flatly rejected that exact argument. *See Fields v. Howe*, No. IP-01-1036-C-B/S, 2002 WL 418011, at *7 (S.D. Ind. Mar. 14, 2002); *Cantu v. Credit Acceptance Corp.*, No. 23-CV-520-JPS, 2023 WL 5508800, at *5 (E.D. Wis. Aug. 25, 2023) ("Similarly, in this case, the Arbitration Clause stipulates that either party may commence arbitration 'before or after a lawsuit has been started over the Dispute or with respect to other Disputes or counterclaims brought later in the lawsuit.' The Arbitration Clause also provides that 'any Dispute' may be arbitrated." (citations omitted)); *Hodson v. Javitch, Block & Rathbone, LLP*, 531 F. Supp. 2d 827, 831 (N.D. Ohio 2008) ("A party may waive its right to arbitrate if its conduct is completely inconsistent with an intent to arbitrate the dispute and the inconsistent conduct actually prejudices the party opposing arbitration. Under the circumstances of this case, JB & R's conduct—i.e., filing collection actions in municipal court on behalf of Capital—One does not satisfy this standard." (citation omitted)); *Schwartz v. CACH, LLC*, No. CIV.A. 13-12644-FDS, 2014 WL 298107, at *3 (D. Mass. Jan. 27, 2014) ("The collection actions, which CACH brought against plaintiff, are distinct from the claims brought by plaintiff here. CACH did not, therefore, waive its right to arbitrate the present dispute."); *Hudson v. Citibank (S. Dakota) NA*, 387 P.3d 42, 51 (Alaska 2016) ("Other courts considering similar fact patterns have likewise held that a debt collection

proceeding does not waive arbitration of a later consumer-protection claim.").

In *Fields v. Howe*, this Court considered whether Discover had waived its right to seek arbitration when Discover had initiated a collection action against the plaintiff in state court. *See* 2002 WL 418011, at *7. The Court found no waiver, reasoning that "[t]he state court case is a collection action-a case initiated by Discover; the federal court case is an action for alleged violation of federal and state laws-a case initiated by Fields." *Id.* The Court continued that, "even if the cases were one and the same, still the governing Cardmember Agreement would permit arbitration" because the terms of the agreement expressly provided that new claims later asserted in a lawsuit would be subject to arbitration and that "nothing undertaken therein shall constitute a waiver of any rights under this arbitration provision." *Id.* Here, the Arbitration Agreements likewise explicitly provide that "[e]ither you or we may delay enforcing or not exercise rights under this Arbitration provision, including the right to arbitrate a claim, without waiving the right to exercise or enforce those rights." *See* K. Herr Exhs. A1 – A5 [ECF No. 30-2] at 11, 28, 41, 56 & 75.

Finally, the collection action is a distinct proceeding from Kimbrough's later-filed consumer statutory claims against American Express here. Under the Cardmember Agreements, if Kimbrough had wished to arbitration the collection action, he could have demanded it. However, he never did. Because the Arbitration Agreements acknowledge that arbitration applies only to such claims as either party demands, there is nothing inconsistent about American Express's insisting upon arbitration of Kimbrough's new claim. In the absence of an affirmative request by Kimbrough to arbitration, American Express was within its rights to file the separate collection action in court. There was no <u>waiver</u> of arbitration, because arbitration was never requested and refused.

**D.    The Arbitration Agreements Encompass Kimbrough's Claims Against American Express.**

Kimbrough next argues that the scope of the Arbitration Agreements does not cover "every controversy or claim" and that his claims against American Express "relate to alleged inaccurate tradelines on his credit report, a matter that is arguably distinct from the everyday operations and terms of the Accounts themselves." Resp. at 2. Additionally, he argues that "significant claims like those under the FCRA should not be compelled into arbitration" absent a "clear and unequivocal waiver." Opp'n Memo. at 4. And he contends that ambiguities in the Arbitration Agreements' language must be construed narrowly against American Express. *Id.* at 9. But these arguments ignore both the terms of the Cardholder Agreements and applicable Supreme Court precedent.

The terms of the Arbitration Agreements here, which provide that "any claim" may be decided by individual arbitration, are very broad:

> Claim means **any current or future claim, dispute or controversy relating to your Account(s), this Agreement, or any agreement or relationship you have or had with us**, except for the validity, enforceability or scope of the Arbitration provision. **Claim includes but is not limited to:** (1) initial claims, counterclaims, crossclaims and third-party claims; (2) **claims based upon** contract, tort, fraud, **statute**, regulation, common law and equity; (3) claims by or against any third party using or providing any product, service or benefit in connection with any account; and (4) claims that arise from or relate to (a) any account created under any of the agreements, or any balances on any such account, (b) advertisements, promotions or statements related to any accounts, goods or services financed under any accounts or terms of financing, (c) benefits and services related to card membership (including fee-based or free benefit programs, enrollment services and rewards programs) and (d) your application for any account. You may not sell, assign or transfer a claim.

*See* K. Herr Exhs. A1 – A5 [ECF No. 30-2] at 11, 27, 40, 56 & 74 (emphasis added). Thus, Kimbrough's FCRA statutory claim based on the account and relationship that he had with American Express falls squarely within the terms of the Arbitration Agreements. And, even if there were any ambiguity about the scope of the Arbitration Agreements, such ambiguity is resolved in

favor of arbitration, not against American Express as Kimbrough argues. *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418–19, (2019) ("[T]he FAA provides the default rule for resolving certain ambiguities in arbitration agreements. For example, we have repeatedly held that ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration. In those cases, we did not seek to resolve the ambiguity by asking who drafted the agreement. Instead, we held that the FAA itself provided the rule. As in those cases, the FAA provides the default rule for resolving ambiguity here." (citations omitted)); *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("Finally, it has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" (citation omitted)); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."); *see also Carvell v. Am. Express*, No. 22-CV-05105, 2023 WL 4931291, at *3 (N.D. Ill. Aug. 2, 2023) (compelling arbitration of FCRA claim); *Cantu*, 2023 WL 5508800, at *6 (compelling arbitration of FDCPA claim).

**E.    Kimbrough's Challenges to American Express's Evidence Are Nothing More than Empty Hypothetical Speculations.**

    **1.    Kimbrough's Challenges to the Declaration of Keith Herr Have No Legal Basis.**

In his Declaration Opposition, Kimbrough "contests the veracity, relevance, and the weight

to be given to the Declaration of Keith Herr." Decl. Opp'n at 1. None of his arguments has any merit. Kimbrough's contention that the Declaration "does not provide irrefutable evidence" immediately collapses because he offers no evidence to refute anything in the Declaration. *See Tinder*, 305 F.3d at 735 ("[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial.").

First, the Declaration of Keith Herr (the "Declaration") [ECF No. 30-1] clearly provides that the declarant, an Assistant Custodian of Records for American Express, based his sworn statement on both the "review of records and documents" and "personal knowledge." *See* K. Herr Decl. ¶ 1. This category of evidence is admissible under the Federal Rules of Evidence. *See* Fed. R. Evid. 803(6); *see also Achey v. BMO Harris Bank, N.A.*, 64 F. Supp. 3d 1170, 1176 (N.D. Ill. 2014) (admitting loan documents as business records under Rule 803(6) based on custodian testimony). Second, Kimbrough's argument that there is "no specific evidence" that he was "notified" of the terms of his accounts or that he "expressly agreed" to the terms is belied by Exhibits A1 – A5 and Exhibits B1 – B5, which demonstrate both the terms of the Cardmember Agreements and his acceptance of them by use of the Accounts. Third, the Declaration presents evidence of providing the Cardmember Agreements to Kimbrough by mail. Without any actual denial of receiving those terms, Kimbrough instead couches his argument in vague terms that "there is no definitive evidence." *See* Decl. Opp'n at 2. If Kimbrough actually did not receive the terms, he has had ample opportunity given his multitude of filings with this Court to declare as much under oath. He has done no such thing. Thus, American Express's evidence remains uncontested. Fourth, and in the same vein, Kimbrough offers no evidence whatsoever that he did, in fact, opt out of arbitration—because he did no such thing. This fact, too, remains uncontested.

<u>Fifth</u>, the billing statements plainly demonstrate use of the Accounts. The plain terms of the Cardmember Agreements, which Kimbrough does not deny receiving, provide that such use constitutes acceptance of the terms of the Cardmember Agreements, including the Arbitration Agreements. Contrary to Kimbrough's contention that the "terms were buried in fine print or not prominently disclosed," the terms are displayed at the top of "Cardmember Agreement: Part 2 of 2" right below the heading "How Your American Express Account Works" for each of his Accounts. *See* K. Herr Exhs. A1 – A5 [ECF No. 30-2] at 6, 23, 36, 51 & 70.

### 2. Kimbrough's Challenges to the Cardmember Agreements (Exhibits A1 – A5) Are Merely Continuations of His Meritless Arguments in the Response and Opposition Memorandum.

In his Opposition to Exhibit A, Kimbrough again attacks the Arbitration Agreements as unfair "provisions [that] present a take-it-or-leave-it proposition," with terms that are ambiguous, complex, overly broad, limiting, procedurally restrictive, unconscionable, and "potential" violations of Indiana public policy. *See generally* Opp'n to Exh. A. All of these arguments, as addressed above, fail as a matter of law. And <u>none</u> of these arguments respond in any form to the admissibility of the Cardmember Agreements, which contain the Arbitration Agreements.

Indeed, <u>nowhere</u> in his Response Filings does Kimbrough actually deny receipt of the Cardmember Agreements or even contend that he lacked the opportunity to review their terms. Instead, he attempts to distract with vague generalities and "concerns about fairness, clarity, and enforceability" based upon what "might be deemed unenforceable" and "may be viewed as deceptive." *Id.* at 3, 4. Kimbrough has provided no evidence to contradict receipt of the Cardmember Agreements. As a result, the Court should deem them uncontested for the purposes of the Motion and, pursuant to their terms, compel arbitration.

### 3. Kimbrough's Challenges to the Billing Statements (Exhibits B1 – B5) Attempt to Expound on the Merits of His Substantive Claims and Are Beyond the Scope of the Motion.

In his Opposition to Exhibit B, Kimbrough contests American Express's "[r]eporting practice" of allegedly "reporting business accounts on Joey Kimbrough's personal credit profile, potentially in violation of federal law." *See* Opp'n to Exh. B at 1. He further argues that American Express "merg[ed] business and credit reports," which "may have negatively impacted [his] personal credit score." *Id.* at 3. And he contends that there is "no evidence" that he "gave explicit consent or was clearly informed that his business credit activities would be reported on his personal credit profile." *Id.* Without contesting the veracity of the billing statements themselves, Kimbrough then concludes that Exhibits B1 – B5 "should not be used in the Defendant's favor" due to the "serious concerns about Defendant's reporting practices and potential violations of federal law." *Id.*

<u>None</u> of these arguments, however, respond in any form to the admissibility of the billing statements. As clearly explained in the Memorandum and the Declaration of Keith Herr, the billing statements establish one crucial fact: that Kimbrough used his Accounts after American Express sent him the Cardmember Agreements. *See* Memo. at 4; *see also* K. Herr Decl. [ECF No. 30-1] ¶ 6 & Exh. B1 – B5 [ECF No. 30-3]. This fact matters because, as clearly provided in the Cardmember Agreements, "[w]hen you use the Account (or you sign or keep the card), you agree to the terms of the Agreement." *See id.*

Glaringly absent from the Opposition to Exhibit B is any denial by Kimbrough of use of any of the Accounts. Instead, he attempts to distract with irrelevant "potential" "serious concerns" that are outside the scope of his Complaint. This is entirely impermissible. *See Prakel v. Indiana*, 100 F. Supp. 3d 661, 671 (S.D. Ind. 2015) ("It is well-established under Seventh Circuit law that

parties cannot amend their complaints through arguments made in response to a motion for summary judgment."). Whether American Express's reporting practices and ostensible "merging business and personal credit reports" violated the law (which they did not) is beside the point. The fact remains uncontested that the billing statements in Exhibits B1 – B5 demonstrate that Kimbrough used the Accounts and, as a consequence, accepted the terms of the Cardmember Agreements.

### III. CONCLUSION

For the foregoing reasons, American Express respectfully request that the Court grant the Motion and compel the parties to arbitrate Kimbrough's claims pursuant to the express terms of the valid and enforceable Arbitration Agreements. Further, American Express respectfully requests that the Court stay this action pending completion of the arbitration proceedings.

Dated: August 31, 2023.                    Respectfully submitted,

                                              By:    /s/ *Adam R. Hoock*
                                                     Stephen J. Newman
                                                     California Bar No. 181570
                                                   snewman@Steptoe.com
                                                   Adam R. Hoock
                                                   Florida Bar No. 118264
                                                   California Bar No. 340811
                                                   ahoock@Steptoe.com

                                                   **STEPTOE & JOHNSON LLP**
                                                   2029 Century Park East, 18th Floor
                                                   Los Angeles, CA 90067
                                                   Telephone: +1 213 439 9400
                                                   Fax: +1 213 439 9599
                                                   docketing@steptoe.com

                                                   Attorneys for Defendant *American Express National Bank*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 31, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and certify that a true and correct copy of the foregoing was provided to all parties and counsel of record.

                                                   */s/ Adam R. Hoock*
                                                   Attorney